**SO ORDERED.**

**SIGNED this 27th day of December, 2012.**




Robert E. Nugent
United States Chief Bankruptcy Judge

DESIGNATED FOR ON-LINE PUBLICATION
BUT NOT PRINT PUBLICATION

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| IN RE: | ) | |
| DOOLEY'S RAINWATER | ) | Case No. 10-14145 |
| CONDITIONING, INC. | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| J. MICHAEL MORRIS, Trustee | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Adversary No. 12-5063 |
| | ) | |
| FAMILY MOTORS, INC.; and/or | ) | |
| RFC, LLC | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Among the trustee's avoiding powers is the power to recover post-petition transfers of property

-1-

that are not authorized by a court order or by the bankruptcy code that is found in 11 U.S.C. § 549. Here, Dooley's Rainwater made a series of car payments to a lender post-petition without the Court's approval, focusing the inquiry on whether making it made the payments in the ordinary course of its business. Generally, a chapter 11 debtor-in-possession may operate its business post-petition as it sees fit and pay debts as authorized by the Bankruptcy Code or the bankruptcy court.[1] But the debtor-in-possession is not totally free from court supervision or oversight. The chapter 7 trustee seeks to recover the car loan payments, asserting that the payments were not authorized by the Bankruptcy Code or the bankruptcy court. In the absence of a court order that expressly authorized the payments, the defendants claim that either § 363(c)(1) authorized these post-petition loan payments as payments in the ordinary course of business or that § 361 authorizes them as a form of adequate protection. Whether these payments were made in the ordinary course of Dooley's Rainwater's business is a disputed material fact. Therefore, defendants Family Motors and RFC are not entitled to summary judgment on the basis of § 363(c)(1). As to the defendants' alternative claim that these payments were made as adequate protection, neither the debtor nor the secured creditors complied with the statutory provisions for seeking and obtaining adequate protection and summary judgment must be denied on this alternative theory as well.

### *Jurisdiction*

The Court has subject matter jurisdiction over this § 549 avoidance action under 28 U.S.C. § 157(b)(1) and (2)(A) and (O) and § 1334.[2]

### *Uncontroverted Facts*

---

[1] *See* 11 U.S.C. § 1107 and § 1108.

[2] Unless otherwise noted, all statutory references are to the Bankruptcy Code, title 11 U.S.C. The trustee J. Michael Morris appears for himself. The defendants Family Motors and RFC appear by their counsel David Eron and Emily Wilson.

All but one of the material facts are undisputed.[3] That one fact, however, is crucial to the defendants' ordinary course of business defense to the trustee's claim. The trustee asserted seven additional statements of uncontroverted fact in response to the defendants' motion. As the defendants did not controvert those statements, the trustee's additional facts in paragraphs 15-21 are deemed uncontroverted.[4]

Dooley's Rainwater Conditioning, Inc. filed its chapter 11 petition on December 10, 2010. Upon the motion of the United States Trustee, Dooley's case was converted to chapter 7 on August 30, 2011.[5] While in chapter 11, Dooley's Rainwater operated its business as a debtor-in-possession. During that time, it made nine loan payments to Family Motors and/or RFC totaling $4,525. These payments were credited to the defendants' prepetition purchase money loan secured by a 2003 Chevrolet Tahoe. On the petition date, Dooley's owed $10,947.45; the loan documents specified monthly payments of $500.[6] The defendants relied on the NADA guide to establish a retail value for the Tahoe at $13,500 as of the petition date and $12,950 at the date of conversion in August 2011. No one sought an adequate protection order from this Court and there is no other order authorizing these payments for any purpose. After conversion of the case, the trustee commenced this adversary proceeding to avoid the post-petition transfers.

Dooley's Rainwater and its principal shareholder, Michael D. Dooley, signed an installment sales contract to purchase the Tahoe from defendant Family Motors on April 16, 2010. Under the agreement,

---

[3] *See* Fact No. 14 stating that debtor "required the use of the vehicle for its ordinary business operations." Adv. Dkt. 18 and 23.

[4] Adv. Dkt. 23. *See* Fed. R. Civ. P. 56(e)(2); D. Kan. L.B.R. 7056.1(b)(2) and (c).

[5] No plan or disclosure statement was ever filed while the chapter 11 was proceeding.

[6] The debtor paid $525 in the month of February, 2011. No explanation is provided for this variance but it is not material to the resolution of this matter.

-3-

Family Motors extended purchase money financing and received a security interest in the Tahoe. Family Motors says it assigned the contract to RFC, but the copy of the installment sales instrument that is in the summary judgment record does not contain an executed notice of assignment.[7] Michael executed the instrument as an individual purchaser under the contract, not as a corporate representative.[8] The sales document suggests that the Tahoe would be titled in both Dooley's Rainwater and Michael, but the certificate of title is not a part of the summary judgment record and the Court can make no finding concerning the Tahoe's ownership.

In the chapter 11 filing, Dooley's Rainwater listed the Tahoe among six vehicles with the following corresponding values on Schedule B:

| | |
|---|---|
| 1995 Ford flat bed truck | $3,200 |
| 1999 Chev Suburban | $3,500 |
| 1999 Chev Suburban | $2,500 |
| 1999 Chev Suburban | $3,000 |
| 2000 International truck | $13,000 |
| 2003 Tahoe | $12,500 |

On Schedule D of its chapter 11 filing, Dooley's Rainwater indicated that all of its inventory, accounts, equipment, and general intangibles were secured to Garden Plain State Bank. After the case was converted, the trustee successfully avoided the Bank's lien in the personal property. The debtor's Schedule D also reflected that Family Motors was a secured creditor.

During the chapter 11, Dooley's Rainwater transferred the 1995 Ford to Mr. Dooley's father-in-law in June of 2011 and sold the 2000 International in early 2011, neither transfer being done on notice or with the Court's authorization. After the conversion to chapter 7, Dooley's Rainwater turned over the three Suburbans to the trustee and they were sold.

---

[7] Adv. Dkt. 18-2. Thus, on this record at least, RFC's status as a secured creditor is open to question.

[8] Adv. Dkt. 23-3, Ex. C.

-4-

At some point in the post-petition time frame but before the case was converted, Dooley's Rainwater transferred the Tahoe to a new entity owned by the individual Dooleys, known as Dooley's Water & Energy Solutions, L.L.C. When Michael Dooley filed his personal chapter 13 bankruptcy in February of 2012, he scheduled no personally-owned vehicles, but his statement of financial affairs reflects that he is holding the "2003 GMC [sic] Tahoe owned by Dooley's Water & Energy Solutions," the new entity formed in August of 2011. Apparently Dooley's Rainwater transferred the Tahoe to the new entity while in chapter 11, again without notice to the creditors or authorization by the Court.[9] There are no transfer documents in the summary judgment record.

Nor does the Court's docket in the main case contain a motion for or an order granting adequate protection of Family's interest in the Tahoe. The defendants never sought stay relief to recover it, either. Finally, Dooley's Rainwater never sought or obtained court authority to use cash collateral.

**Summary Judgment Standards**

Fed. R. Bankr. P. 7056 makes Fed. R. Civ. P 56 applicable in adversary proceedings. Rule 56(e)(2) allows any unaddressed factual contention that is properly supported to be deemed undisputed for the purpose of this motion.[10] Subsection (e)(3) of the Rule permits the granting of summary judgment for movants upon review only if the supporting materials show that the defendants are entitled to judgment as a matter of law based upon the uncontroverted facts.[11]

---

[9] Adv. Dkt. 23-6, Ex. F

[10] *See also,* D. Kan. L.B.R. 7056.1(b)(2) and (c). Because the defendants failed to file a reply to the trustee's response and additional uncontroverted facts, those additional facts are undisputed for purposes of the summary judgment motion.

[11] *Reed v. Bennett,* 312 F.3d 1190 (10th Cir. 2002)(Summary judgment is appropriate if the movant has met its initial burden of production under Rule 56(c) that no genuine dispute of a material fact exists and those undisputed facts entitle the movant to judgment as a matter of law.); *Murray v. City of Tahlequah, Okla.,* 312 F.3d 1196, 1199-1200 (10th Cir. 2002) (same).

-5-

Case 12-05063   Doc# 27   Filed 12/27/12   Page 5 of 13

Here, the movants challenge the trustee's ability to demonstrate the existence of an essential element of the avoidance action – that the transfers were unauthorized.[12] Specifically, they contend that the debtor's post-petition transfers (payments) were authorized by the Bankruptcy Code. If the transfers were authorized by the bankruptcy court or the Code, the trustee's claim will fail. Fed. R. Bankr. P. 6011 apportions the burden of proof to the party asserting of the validity of a challenged transfer. Thus, on summary judgment the Court's function is to determine if there are disputes of material fact about whether the post-petition payments were authorized and whether there is any evidence to support the defendants' claim that they were.

### *Conclusions of Law*

Section 549's purpose is to allow the trustee to avoid post-petition transfers of property that deplete the estate.[13] To successfully avoid a post-petition transfer under the section, the trustee must prove the following elements: that there was a transfer, that property of the estate was transferred, that the transfer occurred after commencement of the case, and that the transfer was not authorized by the Bankruptcy Code or by the bankruptcy court.[14] Only the final element is in partial dispute here; the defendants do not argue that the first three elements are lacking nor do they assert the presence of a court order that authorizes the payments.

**The summary judgment record is insufficient to determine as a matter of law whether the debtor's loan payments were made to the defendants in the ordinary course.**

---

[12] *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986); *In re Grabill Corp.,* 135 B.R. 101, 105-06 (Bankr. N.D. Ill. 1991); *Koch v. Shell Oil Company,* 927 F.Supp. 411, 413 (D. Kan. 1996); *Johnson v. Mullin,* 422 F.3d 1184 (10th Cir. 2005).

[13] *In re Straightline Investments, Inc.,* 525 F.3d 870, 878-79 (9th Cir. 2008) (while dimunition of the estate is cited as a purpose, section 549 contains no explicit requirement that the postpetition transfer depletes the estate).

[14] *In re Marrero,* 382 B.R. 861, 865-66 (1st Cir. BAP 2008).

Defendants contend that the post-petition loan payments were made in the ordinary course of business and, as such, were authorized by § 363(c)(1) of the Code.[15] That section permits the debtor-in-possession to "[sell] or lease . . . property of the estate, in the ordinary course of business, . . . and . . . use property of the estate in the ordinary course of business without notice or a hearing." The use, sale or lease of estate property outside the ordinary course of business requires notice, hearing and court approval.[16] Defendants argue that these payments were made in the ordinary course of business because they are required in order for the debtor-in-possession to continue to use the collateral that is necessary to operate the debtor's business. Indeed, some courts have found post-petition payments on secured debt to be in the ordinary course of business.[17]

Defendants rely heavily here on *Covey v. Soy Capital Bank & Trust Co. (In re T.A. Brinkoetter & Sons, Inc.),* a recent bankruptcy court decision from the Central District of Illinois.[18] In *Brinkoetter*, the chapter 7 trustee sought to avoid transfers of nearly $60,000, a portion of which went to the debtor's lender to pay off five vehicle loans during the period it was in chapter 11. After the debtor began to make voluntary post-petition payments to the bank, the bank sought and obtained relief from the automatic stay. Then, after stay relief was obtained, the debtor and bank reached an accord whereby

---

[15] *See* COLLIER ON BANKRUPTCY ¶ (16th Ed. 2012), explaining that ordinary course transactions are insulated from § 549 avoidance by their "ordinariness."

[16] Section 363(b)(1).

[17] *See e.g., In re Discount Family Boats of Texas, Inc.,* 233 B.R. 365 (Bankr. E.D. Tex. 1999) (regular monthly postpetition deed of trust payments were not unauthorized postpetition transfers but were authorized under the cash collateral order and enabled debtor to continue in the ordinary course of operating its business); *In re Family Health Food U.S.A. Inc.,* 223 B.R. 250 (Bankr. S.D. Fla. 1998) (postpetition payments made by chapter 11 debtor prior to confirmation in order to remain current on its secured debt were allowed by § 1108 which authorizes debtor to continue operating its business).

[18] 2012 WL 1865485 (Bankr. C.D. Ill. May 22, 2012).

-7-

the debtor paid $45,000 in exchange for release of the liens on the vehicles.[19] The trustee claimed that these voluntary payments were outside the ordinary course because debtor failed to obtain an adequate protection order from the court. The bankruptcy court concluded that the absence of a motion for adequate protection and an order granting it did not require that payments be avoided *per se*.[20] As to the $45,000 payoff received by the bank, the bankruptcy court concluded that this transfer must be analyzed using the horizontal and vertical tests to determine whether it was an ordinary course transaction and that the record before it was insufficient to make that determination, as it is in the present case.[21] In short, the rule in *Brinkoetter* does not compel the entry of summary judgment for defendants on their ordinary course of business defense here.

The record in this case is does not support a conclusion that the voluntary post-petition secured debt payments to defendants were made in the ordinary course of debtor's business. In deciding whether a transaction is in the ordinary course, courts apply vertical and horizontal tests. Neither the Tenth Circuit Court of Appeals nor the Bankruptcy Appellate Panel have specifically adopted these tests for determinating whether a post-petition transfer is in the ordinary course of business, but bankruptcy courts in this and many other Circuits do.[22] In *Rajala v. Langer (In re Lodge America, Inc.,)*, a bankruptcy court sitting in Kansas applied those tests in a trustee's action to avoid a chapter 11 debtor's post-petition repayment of an unauthorized post-petition short-term unsecured loan to pay its hotel utilities.[23]

---

[19] 2012 WL 1865485 at *2.

[20] *Id.* at *7.

[21] *Id.* at *8.

[22] *See Dill v. Brad Hall & Assoc., Inc. (In re Indian Capitol Distributing, Inc.),* 2011 WL 4711895 at *11-12; Adv. No. 10-1180 (Bankr. D. N.M. Oct. 5, 2011).

[23] 239 B.R. 580 (Bankr. D. Kan. 1999), *aff'd* 259 B.R. 728 (D. Kan. 2001).

As described in *Collier's*, the horizontal test examines businesses similar to the debtor's to determine whether the transfer is one that would normally be entered into by a similar business. It asks whether the transaction is abnormal or unusual in the context of other, similar enterprises.[24] In affirming the bankruptcy court's decision in *Lodge America*, the District Court described the horizontal test of ordinariness as applying an industry-wide perspective to compare the debtor's business to other like businesses and determine whether the transaction is of a type that occurs in the day-to-day operation of the debtor's business.[25]

The vertical test involves assessing the expectations of the debtor's creditors. It views the transaction from a creditor's perspective and asks whether the transaction is one that subjects a creditor to economic risks that are different in nature from those initially accepted.[26] Under the vertical test, a transaction that is ordinary for other businesses in the industry may not be ordinary for the debtor's business.[27] Courts have examined and compared debtors' prepetition and post-petition activities to determine their "ordinariness."

With barely a nod to these tests, defendants' only statement of fact concerning their ordinary course of business defense is found in Fact 14 stating that debtor "required the use of the vehicle for its ordinary business operations."[28] That contention is supported by the conclusory statement to that

---

[24] 3 COLLIER ON BANKRUPTCY ¶ 363.03[1][a] (16th ed. 2012).

[25] 259 B.R. at 732.

[26] *Burlington Northern Railroad Co. v. Dant & Russell, Inc. (In re Dant & Russell, Inc.),* 853 F.2d 700, 705 (9th Cir. 1988).

[27] COLLIER ON BANKRUPTCY, *supra* at ¶ 363.03[1][b].

[28] Adv. Dkt. 18. The terms of the loan and debtor's prepetition and post-petition payments are not disputed. These facts have some bearing on the vertical test of ordinary-course.

-9-

effect found in affidavit of Michael Dooley that is quoted verbatim in the contentions.[29] There is no factual support in the affidavit that would bear on the horizontal and vertical tests, ignoring the time-honored requirements of Civil Rule 56 that supporting affidavits must set forth facts, not just conclusions.[30] In the absence of any *facts* from which a court could conclude that the vehicle was used in the debtor's ordinary business operations, it is equally likely that debtor's owner used the vehicle for personal use, particularly where he individually was a purchaser, co-owner, and borrower under the loan documents. Nor does Mr. Dooley explain why the Tahoe was necessary to operating the business or how it was used in the business operations, two important bits of information because the debtor had several other vehicles. More importantly, the summary judgment record utterly omits any factual contentions that describing the nature of debtor's business specifically and the related industry in general. The defendants seem to suggest that any loan payment made by a debtor is "ordinary," urging me to take judicial notice of this proposition.[31] But where there are no facts that flesh out the purpose of incurring the debt, the necessity of making the payments, or the necessity of the collateral in debtor's business, the defendants cannot hope to prevail on summary judgment.

The inadequacy of this record parallels the factual deficiencies of the parties' stipulation in *Lodge America*. Judge Flannagan articulated that deficiency in discussing both the horizontal and vertical tests

---

[29] *See* Fed. R. Civ. P. 56(c)(4) requiring that a supporting summary judgment affidavit "set out *facts* that would be admissible in evidence . . ."; *Stephens v. City of Topeka, Kan.,* 33 F. Supp. 2d 947 (D. Kan. 1999) (Conclusory terms or characterizations without any concrete facts to support characterizations are afforded no weight by the court); *Rogers v. United States*, 58 F. Supp. 2d 1235 (D. Kan. 1999) (The general characterization of a transaction is a question of law).

[30] *BancOklahoma Mortg. Corp. v. Capital Title Co., Inc.,* 194 F.3d 1089 (10th Cir. 1999) (Affidavit must set forth facts, not conclusory statements); *Fitzgerald v. Corrections Corp. of America*, 403 F.3d 1134, 1143 (10th Cir. 2005) (Conclusory affidavit without specific supporting facts has no probative value).

[31] *See* Adv. Dkt. 18, p. 5.

-10-

of ordinariness under § 364(a) addressing the debtor's unauthorized post-petition short-term unsecured loan to pay its hotel operating utilities and subsequent repayment of that loan.

> [Defendant's] argument regarding this [horizontal] test substitutes logic for proof. He observes that the hotel business is seasonal with periods of high and low rentals that necessarily require borrowing to pay expenses. This observation leads him to conclude that Lodge America was acting in the ordinary course of business in the hotel industry when it borrowed from him to pay its utilities. Although [defendant's] reasoning is appealing, it is not proof. The ordinary-course question is primarily one of fact, not of reason. Yet, the stipulation is silent about the borrowing practices of the hotel industry.
>
> * * *
>
> Under this [vertical] test, [defendant] continues to rely on reason rather than proof. He suggests that since the debtor needed cash to keep its hotel operating, its creditors would have expected the borrowing and would have consented to a formal request to borrow money and repay it with estate funds. But since the stipulation is silent about the normal operations of Lodge America, no grounds exist to support a finding that Lodge America had borrowed in the past to supplement its cash flow. In short, [defendant] has adduced no evidence indicating that Lodge America's creditors had a basis in fact to expect that Lodge America would borrow, from either a bank or an individual, to pay its utilities.[32]

Even if Dooley's conclusory affidavit were sufficient to meet movants' summary judgment burden to properly support its factual assertions, the trustee has adequately controverted this contention of fact by showing that the Tahoe was one of six Dooley's vehicles available for use in operating the business, two of which Dooley's voluntarily transferred away while in chapter 11 (without notice to creditors and without authorization of the bankruptcy court). Dooley's had available to it three Chevrolet Suburbans with which to operate its business. The presence of those vehicles casts doubt on defendants' factual contention that the Tahoe was "required" for use in Dooley's business operations. Nor can the Court ignore that Mr. Dooley was also liable on the instalment contract, making the circumstances surrounding these otherwise unauthorized payments even more questionable.

The defendants have failed to show the post-petition loan payments were made in the ordinary

---

[32] 239 B.R. at 583-84

-11-

Case 12-05063    Doc# 27    Filed 12/27/12    Page 11 of 13

course of Dooley's Rainwater's business as a matter of law and they should be denied summary judgment on that defense.[33]

### Debtor's post-petition secured debt payments cannot be justified as adequate protection payments under § 361(1) and § 363(e).

After the fact and as an alternative basis for summary judgment, defendants attempted to justify the vehicle payments as informal adequate protection payments made by the debtor to protect their security interest in the Tahoe and therefore "authorized by § 361(a) and § 363(e). The latter section conditions the provision for adequate protection on the request of an entity claiming a security interest in property of the estate. Defendants never requested adequate protection payments nor did they ever claim that they lacked adequate protection.[34] Given the clear procedural requirements to obtain adequate protection payments, defendants are hard-pressed to assert that the debtor's regular payments constituted adequate protection when they have done nothing to request that relief and the Court did not authorize adequate protection payments.[35] Nor did they come forward with any informal adequate protection agreement that they may have entered into with the debtor.[36] Indeed, these defendants

---

[33] Some courts have held that postpetition payment of a prepetition debt is simply not authorized by § 363(c)(1) as a transfer in the ordinary course of business and is not the type of transfer contemplated by that section. *In re Metropolitan Cosmetic & Reconstructive Surgical Clinic, P.A.,* 115 B.R. 185, 189 (Bankr. D. Minn. 1990); *In re Smith Min. & Material, L.L.C.,* 405 B.R. 589, 596 (Bankr. W.D. Ky. 2009) (payment that is not made for a post-petition ordinary operating expenses is avoidable under § 549); *In re Miller Mining, Inc.,* 219 B.R. 219, (Bankr. N.D. Ohio 1998) (post-petition payment of over $17,000 on prepetition secured equipment loan was outside ordinary course of business and avoidable).

[34] *See* § 361 and § 363(e) requiring defendants to request adequate protection for use of their collateral and Fed. R. Bankr. P. 4001 for the procedure to obtain adequate protection.

[35] COLLIER ON BANKRUPTCY, *supra* at ¶ 363.03 states that a debtor-in-possession may continue to use property in the ordinary course of business even if the property is subject to an encumbrance, but noting: "Of course, they must provide adequate protection *if requested by an entity with an interest in the property.*" (Emphasis supplied).

[36] *See* Fed. R. Bankr. P. 4001(d).

-12-

cannot even show that their interest in the collateral needed any protection. Their own summary judgment papers suggest that there was sufficient value in the Tahoe to adequately protect their security interest.[37] Summary judgment on defendants' "adequate protection" defense must also be denied.[38]

### *Conclusion*

Because the summary judgment record is inadequate to support the Court's conclusion as a matter of law that debtor's post-petition loan payments to defendants were made in the ordinary course of business, the defendants' motion for summary judgment on the trustee's § 549 cause of action is DENIED. As provided in Civil Rule 56(g), the material facts found not to be in dispute by this order are deemed established in the proceeding. The Clerk will set the this proceeding for a one-half day trial as soon as the Court's calendar permits.

# # #

---

[37] John Hattan's affidavit contends that the vehicle's value was not less than $13,500 on the petition date and had dropped to $12,950 in the ensuing 9 months while defendant RFC received $4,525 in payments over the same period. *See* Dkt. 18-1, ¶ 3.

[38] To the extent defendants are arguing that voluntary adequate protection payments, without notice or court approval, were made in the ordinary course of debtor's business, that argument is also rejected. *See In re Miller Mining, Inc.,* 219 B.R. 219, 224 (Bankr. N.D. Ohio 1998)(adequate protection payments are not within the debtor's ordinary course of business; § 363(e) requires court authorization for adequate protection payments).

-13-